GEORGE B. KAY, PLAINTIFF IN ERROR, v. GEORGE NOLL, DEFENDANT IN ERROR.

1. **Replevin:** CONSPIRACY AND FRAUD: EVIDENCE. The defense in an action of replevin being founded upon an alleged conspiracy between B., the agent of the plaintiff, and R., the maker of the chattel mortgage under which plaintiff claims, to defraud the creditors of R., by means of the making, delivery, and foreclosing of said mortgage, and said B. having been called as a witness by the plaintiff, and being under cross-examination by defendant's counsel, and having stated, in reply to a question put by counsel, that he went to board with R. shortly after the execution of the mortgage, *Held*, Error on the part of the court to refuse to allow R. to state, in reply to a question put by plaintiff's counsel, how he came to go to the house of R. to board.

2. ———: RIGHT OF POSSESSION: EVIDENCE. The question being confined to that of the right to the possession of the property at the date of the commencement of the action, evidence offered by the plaintiff to prove that at the sale of the property on foreclosure of the mortgage some time after the replevin of the same, he used diligence to procure bidders from abroad, and to sell the property at the best price, *Held*, Properly refused.

3. ———: FRAUDS: INSTRUCTIONS TO JURY. There being no evidence of a fraudulent intent on the part of R. in executing the chattel mortgage under which plaintiff claims the goods in question, *Held*, Error on the part of the court to change, alter, and modify the several instructions offered by plaintiff, and set out in full in the opinion, by adding thereto the words, " or unless he (the plaintiff) had notice of such facts as would lead a man of ordinary prudence and diligence to a knowledge of such fraudulent intent on the part of R."

4. **Trial:** EVIDENCE. There being no evidence before the court that any witness had sworn falsely, but the main witness for the plaintiff, before his final dismissal as such witness, having asked leave to make a correction and retraction of a part of his testimony, *Held*, Error on the part of the court to give in charge to the jury the maxim *Falsus in uno, falsus in omnibus*.

5. ———: ISSUES. Upon the evidence, *Held*, Error on the part of the court to submit to the jury for their special finding the question whether " the mortgage of plaintiff is fraudulent and void as against defendant."

ERROR to the district court for Gage county. Tried below before BROADY, J.

*Burke & Prout,* for plaintiff in error.

*T. D. Cobbey,* for defendant in error.

COBB, J.

The action was replevin. The defendant defended the taking and detention of the goods, which consisted of manufactured saddles and harness and saddler's and harness maker's findings and furniture, on the ground that he was a constable, and had in his hands, for service, eleven writs of execution against Addison C. Rodocker, issued out of justice court, and by him levied upon the goods replevied in the action. That the judgments upon which said executions were issued aggregated, with costs, the sum of $1,411.54. That the mortgage from Rodocker to Kay was executed and delivered, but that the said Rodocker and one Spencer G. Bryant, as agent for plaintiff, conspired, combined, and confederated together in the making of the same, to hinder, delay, and defraud the creditors of the said Rodocker. That said mortgage was without consideration, and made for the fraudulent purpose aforesaid, etc.

There was a trial to a jury, with a verdict for the defendant, and a finding of the value of his right of possession at $1,250.41.

There were also special findings as follows:

" Was it the agreement between Spencer G. Bryant, the agent of the plaintiff, and A. C. Rodocker, the mortgagor, that the mortgagor, A. C. Rodocker, should remain in the possession of said goods, and sell the same in the usual course of trade?

" A. Yes."

Also the following special findings on questions sub-mitted by the court on its own motion:

" 1.  At the commencement of the action what was the value of the property replevied herein ?

" A.    $1,152.90.

" 2.  At the commencement of this action, had the plaintiff 's mortgage been paid according to the sixth instruction given on the court's own motion ?

" A.    No.

" 3.  If you answer the last above interrogatory numbered ' 2 ' in the negative, how much is now due to plaintiff on the note and mortgage offered in evidence ?

" A.    $500, and interest.

" 4.    Is the mortgage of plaintiff fraudulent and void as against defendant ?

" A.    Yes."

The plaintiff's motion for a new trial having been overruled and judgment rendered for the defendant, the cause is brought to this court on error by the plaintiff, who assigns the following errors :

1.  The court erred in refusing to admit testimony offered on the part of the plaintiff explanatory of the reasons why Spencer G. Bryant, agent of the plaintiff, went to board with A. C. Rodocker, the mortgagor.

2.  The court erred in refusing to admit testimony offered on the part of the plaintiff, showing the manner in which the mortgage of the plaintiff was foreclosed, and the efforts made by the agent of the plaintiff in securing the highest possible price for the goods, sold to satisfy the mortgage.

3.  The court erred in refusing to admit testimony offered by plaintiff, and in admitting testimony given by defendant over the objections of plaintiff.

4.  The court erred in giving instructions four, five, and six, asked for by plaintiff, as modified, changed, altered, and amended by the court on its own motion.

5. The court erred in refusing to give instructions asked for by plaintiff and numbered two, seven, eight, and nine.

6. The court erred in giving instructions asked for by defendant, and numbered eight, thirteen, seventeen, nineteen, and twenty.

7. The court erred in giving the instructions on its own motion numbered one, two, three, four, five, six, and seven.

8. The court erred in giving to the jury upon its own motion special interrogatory numbered four.

9. The court erred in reading or sending out, with the jury instructions upon its own motion numbered one, two, three, four, five, six, and seven, without having endorsed upon the margin of said instructions the word "given."

10. The verdict of the jury is not supported by sufficient evidence.

11. The verdict of the jury is contrary to law and contrary to instruction given by the court and numbered twenty.

12. The verdict is irregular and insufficient upon which to render judgment, in that it finds that no damages were sustained by the defendant.

13. The verdict of the jury appears to have been given under the influence of passion and predjudice.

14. The court erred in overruling a motion for a new trial.

It clearly appears that throughout the transactions out of which this litigation arose, the plaintiff, being a non-resident of the state, was represented by Spencer G. Bryant, his agent and father-in-law, who was engaged in business at the place where these transactions took place. Upon the trial this agent was called as a witness for the plaintiff, and testified as to his agency in making the loan of money to Rodocker, to secure which the chattel mortgage was taken ; the taking of the note and mortgage therefor; the taking of possession of the mortgaged chattels for the purpose of foreclosing the mortgage; the taking of said goods from him by the defendant, under and by virtue of

executions in his hands against Rodocker; and other facts.

He was then cross-examined by the counsel for the defendant. In the course of such cross examination he was asked by counsel for defendant as follows:

Q.   At the time of the execution of this note and mortgage you were boarding in the family with Rodocker, were you not?

A.   I was not, sir.

Q.   You were not boarding there?

A..   I was not at the time this was taken. I had never been in his house, and never even seen his wife, up to that time.

Q.   Where were you residing at that time?

A..   At the Potter House.

Q.   Where were you residing at the time you took posession of the goods?

A.   At Rodocker's.

Q..   How soon after the execution of this mortgage did you go to Rodocker's?

A..   I cannot tell you.

\*        \*        \*        \*        \*        \*

Q.   How long did you board at the house of Rodocker after you took possession of the stock of goods?

A.   I cannot tell you; I boarded there all winter.

The witness was recalled by counsel for the plaintiff, who, among other questions, propounded to him the following:

Q.   State how you came to board at Rodocker's.

Objected to by counsel for defendant, as immaterial, irrelevant, and incompetent.

The objection was sustained.

As before stated, the defense set up in the answer of defendant consists mainly in the allegation of a fraudulent conspiracy between this witness, as agent of the plaintiff, and Rodocker, the mortgagor, to place this mortgage on

the goods as a lien, and then to fraudulently foreclose it, sell the goods, and divide the proceeds, and so defraud the creditors of Rodocker out of their claims. The fact that the witness, pending these transactions, became an inmate of the mortgagor's house and family, was a coincidence which to some extent tended to give color to the charge of the existence of such conspiracy (and might do so if followed up by and connected with other circumstances), and was a circumstance which the plaintiff ought to have been allowed to explain, if he could. To deny him the opportunity of so doing was certainly not conducive to a fair trial.

In the course of the re-examination of this witness, counsel for plaintiff propounded to him the following question:

Q. State as to what efforts you made to have Beatrice men there, and get the highest price for them, the goods?

Objected to as immaterial, irrelevant, incompetent, and not proper rebuttal.

Objection sustained.

The evidence sought to be elicited by this question could only refer to the manner in which the mortgage was foreclosed; so that when it is borne in mind that the question before the court was as to the right of the possession of the goods at the time of the issuance of the order of replevin, it must be apparent that the evidence was inadmissible.

The third assignment of error is too general, and will not be considered.

Upon the trial, counsel for the plaintiff prayed the court to give in charge to the jury his instruction No. 4, as follows:

"4. The jury are instructed that even should you believe from the evidence that Rodocker made the mortgage under which the plaintiff claims the right of possession to the property in question, for the purpose of defrauding his other creditors, yet you cannot find for the defendant, unless you also believe from the evidence that the plaintiff

had knowledge that such was the purpose of the said Rod-ocker in giving said mortgage, and that he took said mort-gage to aid and abet said Rodocker in such purpose."

Which instruction the court changed and modified by adding thereto the following : " Or that he had notice of such facts as would lead a man of ordinary prudence and diligence to a knowledge of such fraudulent intent on the part of Rodocker," and as so changed and modified, gave the said instruction in charge to the jury; also the follow-ing:

"5. The jury are instructed that the mortgage introduced by the plaintiff in evidence is not fraudulent on its face, and in order for you to find for the defendant you must believe that there was a fraudulent purpose in the making and receiving of the same which was shared by both the plaintiff in this action and A. C. Rodocker, who made the same."

Which the court changed and modified by adding thereto the following : " Or that Rodocker had such fraudulent purpose, and plaintiff had notice of such facts as would lead a man of ordinary prudence to a knowledge of such fraudulent purpose on the part of said Rodocker. And you are also instructed that such a belief must be formed from believing that a preponderance of the testi-mony goes to establish such facts;" and as so changed and modified, gave the same to the jury.

The foregoing instructions, as given, no doubt contain a very fair exposition of the law applicable to a case, where there was evidence of a fraudulent intent on the part of the mortgagor, and of the existence of facts at the time of the execution of the mortgage indicating such fraudulent in-tent, which, if inquired into, would have led to a knowl-edge thereof.    But in the case at bar there is no evidence of a fraudulent intent on the part of the mortgagor at the time of the execution or delivery of the mortgage, nor the slightest evidence of any fact, known or unknown to the

mortgagee, indicating or tending to indicate the existence of a fraudulent intent on the part of Rodocker, the mortgagor. When it is borne in mind that the true office of instructions is to give the jury a knowledge of the law applicable to the evidence before them in the case on trial, it must be seen that the most dangerous departure from the true rule is to give instructions expressing the law correctly as applicable to a somewhat similar case, but which by reason of the presence or absence of evidence upon a vital point in the case then before the court and jury is quite inapplicable to it.

Before leaving the question of instructions I will consider some of those given by the court upon its own motion and excepted to by the plaintiff, to wit, instructions No. 4 and 6, as given by the court upon its own motion, and which are as follows:

"4. If you believe that any witness has wilfully and knowingly sworn falsely in this trial on any material fact involved in the trial, you can reject the testimony of such witness in all matters in favor of the party calling him, if you think him unworthy of belief."

\*  \*  \*  \*  \*  \*

"6. You are further instructed that a chattel mortgage of a stock of goods used in the way of retail trade, where the mortgagor is allowed to continue in the possession of the property and to sell the goods in the usual course of trade, is in law fraudulent and void as against the creditors of the mortgagor, no matter whether the parties intended any actual fraud or not, unless it is shown by the evidence to your satisfaction that the sales so made by mortgagor was as agent of mortgagee, under agreement to apply all proceeds of such sales on the mortgage for the benefit of the mortgagee, and that such application of proceeds of such sales was actually made, and in that event the sales would reduce the amount due on the mortgage to their full amount, and if they amounted as much as the mort-

gage would pay off and entirely satisfy the mortgage; and if you should find from the evidence that the plaintiff's mortgage had in this way been paid off before the commencement of this action, then you should find for the defendant."

Like those which we have already considered, these in-instructions are objectionable, chiefly because of the want of facts in the evidence to render them applicable to the case under consideration.

As to the above instruction numbered four, it appears from the record that when the witness Bryant was first upon the stand he testified that at no time, either at the time the mortgage was executed or afterwards, did he grant Rodocker the right to sell the mortgaged property in the usual course of trade. Upon being recalled the following morning he testified that after having testified as he had the evening before, Rodocker had informed him that he did grant him such permission, and he so qualified his former testimony by saying, "I think I did tell him he might sell and account to me for the property. He brought it to my mind last night, and I think it was the case."

When a witness, on the stand, makes a mistatement of fact and afterwards, before finally leaving the stand, desires to make a correction of it and state the fact as he then remembers or understands it, he will always be allowed to do so, and in such case I have never known a court to apply the maxim *Falsus in uno, falsus in omnibus.* Indeed I think that maxim only applicable to cases where the facts indicate that the false statement is made deliberately and is adhered to by the witness. It is true that in the case at bar the witnesses Rodocker and Winter state the facts somewhat different from that of the witness Bryant, but this difference I think consists more in the construction which the different witnesses placed upon the words used by the parties to the mortgage and alleged contemporaneous agreement than in the words themselves.

But I do not think the facts testified to by the witness which we are now considering at all material in the case. While it has been often held by this court, and is doubtless the law, that in case of a mortgage of merchandise with a stipulation contained in the mortgage (and perhaps equally so where the stipulation is contained in a contemporaneous or subsequent agreement) to the effect that the mortgagor may continue to sell the goods on his own account, or in the usual course of business, such mortgage will be held fraudulent and void as between the mortgagee and such creditors as may sieze such goods by virtue of attachment or execution while they remain in the possession of the mortgagor, or before the mortgagee has reduced them to possession under his mortgage; yet I think it about equally clear, if not so well settled by authority, that after the mortgagee has reduced the goods to possession for the purpose of foreclosing the mortgage in conformity to its stipulations his lien will take precedence of those of creditors whose attachments or executions are thereafter levied, notwithstanding the existence of a stipulation such as above referred to or the fact that it has been acted upon by the mortgagor. See *Fitzgerald v. Andrews*, 15 Neb., 52.

What I have said above will apply equally to the first part of the remaining instruction, No. 6. As to the latter part of said instruction, as the jury by a special finding found that the mortgage had not been paid off, in whole or in part, by the means indicated in said instruction, it is not deemed necessary to examine it further.

By the eighth assignment the plaintiff in error complains of the submitting by the court, upon its own motion, to the jury, for its special finding, of interrogatory number four. By this submission the court told the jury to answer by a special finding the following question: " Is the mortgage of plaintiff fraudulent and void as against defendant?"

The submission of this question was entirely unnecessary, and its answer, in addition to the general verdict, could

subserve no useful purpose; but its submission, taken in connection with the giving of the several instructions hereinbefore considered, was erroneous chiefly in that it tended to press upon the mind of the jury the idea of fraud, when, as hereinbefore intimated, there was a total absence of evidence before the jury upon which to predicate a charge of fraud against either of the parties to the mortgage.

Having already extended this opinion to an unusual length, and reached the conclusion that there must be a new trial, the remaining assignments will not be considered.

The judgment of the district court is reversed, and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

The other judges concur.