MAX MEYER ET AL. V. UNION BAG & PAPER COMPANY.

FILED JUNE 6, 1894. No. 5521.

1. **Review:** ASSIGNMENTS OF ERROR: INSTRUCTIONS. Error assigned as to the giving of a group of instructions will be considered only so far as is necessary to determine that any one of such instructions was properly given.

2. **Fraudulent Conveyances:** PREFERRING CREDITORS: QUESTION FOR JURY. A debtor who is insolvent, or in failing circumstances, may pay or secure one or more of his creditors in full, and thus create a preference in their favor, which may have the effect to exclude other creditors, and the question of whether such action was with an honest or with a fraudulent intent or purpose is one of fact and not of law.

3. ———: ———. A debtor in failing circumstances may lawfully prefer one or more of his creditors and secure such creditors by mortgage or conveyance absolute, provided the transaction is in good faith and not made with intent to defraud other creditors. (*Costello v. Chamberlain*, 36 Neb., 45.)

4. **Voluntary Assignments:** BILL OF SALE. The bill of sale herein *held* to be a conveyance to secure or pay *bona fide* debts, and not void for being such a conveyance as to constitute a voluntary assignment within the true meaning or construction of the terms of the provisions of the assignment law.

ERROR from the district court of Douglas county. Tried below before DOANE, J.

*Charles Ogden* and *Joel W. West,* for plaintiffs in error.

*W. W. Morsman, contra.*

HARRISON, J.

May 1, 1890, H. Rehfeld and Julius Rosenberg were in business in the city of Omaha as partners under the firm name and style of "Omaha Chemical Works," and being indebted to the parties, business firms and banks, plaintiffs in error herein and others, including the defendant in error, executed and delivered to Moritz Meyer, of the firm of Max Meyer & Co., the following conveyance or bill of sale:

"For and in consideration of the sum of five thousand six hundred and nineteen and $\frac{60}{100}$ (5,619.60) dollars to us in hand paid, and the receipt whereof is hereby acknowledged, we do hereby bargain, sell, convey, assign, and set over unto Max Meyer & Co., Omaha National Bank, A. J. Simpson, Commercial National Bank, and Julius Meyer all our right, title, and interest in and to all the chattels, stock, goods, wares, merchandise, machinery, tools, implements, and fixtures contained in the building known as Nos. 310 and 312 South Eleventh street, in the city of Omaha; also, all goods, wares, and merchandise, a list of which is hereto attached, marked 'Exhibit A,' and made a part hereof; it being the intent of this instrument to sell and convey all and each of said articles; and by these presents we do hereby sell, assign, transfer, and set over unto the above named vendees all our right, title, and interest in and to all book accounts due us or which may become due."

Max Meyer & Co. immediately took possession of the property described in the above instrument and proceeded to sell it and pay from the proceeds the sums due the different grantees named therein, the several amounts having been aggregated to form the sum named in the bill of sale as a consideration for the conveyance. The Union Bag &

Paper Company, at this time a creditor of the Omaha
Chemical Works, commenced an action on its claim and
procured and levied an attachment by garnishment process
on the goods and chattels described in the bill of sale. As
an outcome of the garnishee proceedings, the plaintiffs in
error were ordered by the court to pay certain moneys into
court, and failing to comply with the order, were sued by
the defendant in error in this action, to recover the amount
of its claim. The case was tried to the court and a jury
and a verdict returned for the defendant in error, motion
for a new trial was filed by plaintiffs in error, submitted to
the court and overruled, and judgment was rendered in
favor of defendant in error on the verdict. The plaintiffs
in error removed the case to this court by petition in error.

One of the assignments of error is as follows: "The
said court erred in the instructions given to the jury on the
trial of said action, especially instructions numbered 1, 2,
3, 4, 5, 6, and 7, given on its own motion." Under this
assignment counsel for plaintiff in error make an attack
on but one of the instructions, viz., No. 3. This was the
only instruction of those given to which exception was
noted at the time of the trial. In the motion for a new
trial and in the petition in error it was grouped with others,
there being no specific and definite assignment of complaint
as against any single or particular one. Nos. 4 and 5 of
the instructions given by the court on its own motion were
entirely proper and correct, and having determined this to
be true, we will not further consider this assignment of
error, agreeably to the rule of this court announced in
*Hiatt v. Kinkaid*, 40 Neb., 178, where it was held: "An
assignment of error as to the giving *en masse* of certain
instructions will be considered no further than to ascertain
that any one of such instructions was properly given."
(See, also, *McDonald v. Bowman*, 40 Neb., 269; *Jenkins v.
Mitchell*, 40 Neb., 664.)

The only other assignment of error to which counsel

have directed our attention is, that the verdict was not sustained by sufficient evidence and contrary to law. This case was tried in the court below, by both court and counsel for defendant in error, on the theory that the bill of sale was void for the reason that it was a voluntary assignment for the benefit of creditors, and not made in conformity with the provisions of our statute under the head of assignments (Comp. Stats., ch. 6), the first section of which provides as follows: "That no voluntary assignment for the benefit of creditors hereafter made shall be valid unless the same shall be made in conformity to the terms of this act," and preferred the creditors named in the bill of sale. The court told the jury in one instruction that there was no question of actual fraud involved in the case. The evidence does not show any fraudulent intent on the part of either debtor or creditors named in the conveyance to hinder, delay, or defraud other creditors. The amounts owing by the Omaha Chemical Works to each creditor named in the bill of sale was a true indebtedness, and the bill of sale was a *bona fide* conveyance to the creditors named for the purpose of securing their claims, and if it was not within the scope of the section of the assignment law above quoted, or was not a voluntary assignment within the true meaning and construction of the statute in regard to assignments, it was not invalid. In *Costello v. Chamberlain*, 36 Neb., 45, it was held: "A debtor in failing circumstances may lawfully prefer one or more of his creditors and secure such creditors by mortgage or conveyance absolute, provided the transaction is in good faith and not made with intent to defraud other creditors." In *Kilpatrick-Koch Dry Goods Co. v. McPheely*, 37 Neb., 800, it was held: "A debtor in failing circumstances has a right to secure or pay in full a portion of his creditors, to the exclusion of the others; and whether in so doing he was actuated with a fraudulent purpose, is a question of fact and not of law." And in the text of the opinion it is stated: "A debtor has a

right to prefer his creditors; to pay part in full to the exclusion of others; and he has right to secure the debts of a part of his creditors to the exclusion of the others; and this is true whether he be insolvent or in failing circumstances, or not. All that the law requires of him is that he should act honestly; that his disposition of his property should not be made for the fraudulent purpose of hindering, delaying, or defrauding his creditors; and whether an act of a debtor in the disposition of his property was fraudulent, is always a question of fact, and not a question of law." (See, also, *First Nat. Bank of Denver v. Lowrey*, 36 Neb., 290, and cases cited.)

It is strenuously contended by counsel for defendant in error that this case is within the rule announced in *Bonns v. Carter*, 20 Neb., 566, 22 Neb., 495; but *Bonns v. Carter*, in so much as it refers to the assignment law, was overruled in an opinion written by IRVINE, C., in the case of *Jones v. Loree*, 37 Neb., 816, and had been in the case of *Hamilton v. Isaacs*, 34 Neb., 709, and *Hershiser v. Higman*, 31 Neb., 531, we may say overruled, but not in express terms. Commenting upon the doctrine of *Bonns v. Carter* and the scope to be given to the provisions of our assignment law, in the case of *Landauer v. Mack*, 39 Neb., 8, RYAN, C., says: " The argument of plaintiff in error seems to be based largely upon the theory that the several mortgages in fact constituted an assignment of the firm of G. H. Mack & Co., contrary to the terms of the assignment law of this state. It is true that in *Bonns v. Carter*, 20 Neb., 566, language was employed by a portion of this court which would seem to justify this contention of the plaintiffs in error. It is quite clear that the provisions of the assignment law should not be made to operate more broadly than its terms express; in other words, its operation should not be extended by implication. The assignment law prohibited assignments made in any other manner than that fixed by its terms, but did not undertake to abrogate the provisions of section 20

chapter 32, Compiled Statutes. The language of this section is as follows: 'The question of fraudulent intent, in all cases arising under the provisions of this chapter, shall be deemed a question of fact and not of law,' etc. The repeal of a statute by implication is not favored, and certainly the force given the assignment law by a portion of this court in *Bonns v. Carter, supra,* necessarily has this operation. Whether an assignment is made in conformity with the provisions of the assignment law, may be properly a question for the court to determine upon its construction of the instrument or instruments creating the assignment. It nevertheless remains true that whether mortgages or conveyances are fraudulent is a question of fact to be determined by the jury, or, in cases tried like the one at bar, by the court, solely upon the weight of the evidence adduced. Such questions are questions of fact involving largely the intention of the parties to the transaction, and should not be determined as questions of law arising under the assignment act." In the case at bar it is not contended that the transaction is in any manner tainted with fraud, and, viewed in the light of all the evidence, it cannot be called an assignment such as is contemplated by our statute. It can be called nothing more than an attempt to pay or secure certain creditors. By the conveyance they were preferred, it is true, but with—so far as the testimony discloses—an honest motive and with no intent to hinder, delay, or defraud other creditors in the collection of their claims, further than any allowed preference must necessarily so operate. The judgment of the lower court is reversed and the case remanded.

REVERSED AND REMANDED.